IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IVAN M. CROCKETT,
        Plaintiff,
    v.                          Case No. 3:11-cv-272-KRG-KAP
ROBERT MILLER,
        Defendant

Order, Report and Recommendation

Order and Recommendation

Pending are the cross motions for summary judgment by Robert Miller, the remaining defendant, and by plaintiff Ivan Crockett. For the reasons explained below, the defendant's motion at docket no. 80 should be granted and the plaintiff's motion at 86 should be denied. The plaintiff's motion at docket no. 90 for additional time to file a response to defendant's motion is terminated as moot because plaintiff filed that response at docket no. 96.

Report

As the Court recalls from proceedings at the motion to dismiss stage, see docket no. 36 and docket no. 39, there are two remaining claims by plaintiff Crockett against defendant Miller: that Miller ordered Crockett to be deprived of food for four days, and that Miller used excessive force against Crockett by choking him on December 17, 2009. The evidence to be considered in evaluating the motions for summary judgment comes in all important respects from the deposition of the plaintiff, docket no. 83-1, and from his answers to defendant's interrogatories, docket no. 83-7. Miller provides an affidavit giving his quite different account of

events and some additional evidence from other prison personnel but I do not rely on any of that where it is contrary to Crockett's account.

Crockett is at S.C.I. Somerset serving two sentences imposed by the Court of Common Pleas of Blair County, one for controlled substances violations and one for retaliation against or intimidation of a witness. In late November 2011 Crockett filed a complaint against Miller alleging that Miller had violated Crockett's rights under the Eighth Amendment while Crockett was a pretrial detainee at the Blair County Prison in December 2009. According to Crockett's complaint, Miller deliberately placed Logan D'George, an inmate who had testified against Crockett at his preliminary hearing on October 22, 2008, on the same cell block as Crockett. Crockett had been in the prison since his arrest on August 6, 2008; D'George was committed to the Blair County Prison on December 13, 2009. The day he was committed D'George allegedly entered Crockett's cell and attempted to assault Crockett with a pen, and there was an altercation between the two. D'George needed medical attention, Crockett does not allege any injury from the altercation. There was no separation order applicable to D'George and Crockett: Crockett had not listed D'George as an "enemy" when he was committed because D'George was not in the prison and Crockett had no reason to believe D'George would be in the prison. Crockett depo. at 19-20. Crockett later pleaded guilty to

2

attempting to intimidate a witness and received a 3-6 year sentence for this charge on August 27, 2010. In Crockett's original complaint, docket no. 5, Crockett claimed that Miller was legally liable for the injury inflicted on Crockett by the criminal sentence. Crockett's claims of excessive use of force first arose in the amended complaint, docket no. 10, filed in January 2012.

Crockett alleged that after the altercation Miller moved Crockett and his cellmate Jeremiah Morgan to the RHU. Allegedly, for the next three days corrections officers fed Jeremiah Morgan but placed Crockett's trays of food on a stand outside of his cell where it was out of reach. Crockett had water to drink. He complained to each corrections officer about his lack of food and in response each officer just closed the outer door to his cell. Crockett depo. at 48-49. Crockett neither asked Morgan to share his food, nor was given any food by Morgan, and the two of them apparently shared a total lack of curiosity about the strange handling of Crockett's food supply. Crockett depo. at 67-68, 77-78; *see also* docket no. 102 Morgan affidavit. Crockett alleged that he suffered headaches, stomach aches, and fatigue from this food deprivation; in his deposition he stated that other than these aspects of hunger he had no other symptoms. Crockett depo. at 76, 77. Crockett also recalls being interviewed during the period between December 13 and December 17 by a member of the Hollidaysburg Police Department as part of the investigation that

3

led to the criminal charges against Crockett, and Crockett did not tell the officer anything and made no allegation that he was being deprived of food. Crockett depo. at 71-72. When Crockett was eventually charged with intimidation or retaliation against D'George and had a preliminary hearing on February 16, 2010, his counsel questioned Miller in an attempt to preclude use of Crockett's statements to Miller as un-<u>Mirandized</u> or involuntary. Despite every incentive to do so, Crockett never even inquired of Miller at this juncture about whether Crockett's statements would be considered involuntary because of his weakened condition after three days without food. See docket no. 96, Exhibit 6, Preliminary Hearing Transcript for <u>Commonwealth v. Crockett</u> Cr. No. 338-2010 (C.P. Blair Co.).

On the morning of December 17, 2009, Crockett saw Miller for the first time since the 13th, when Miller allegedly took Crockett to another cell in the RHU a few cells away from his original cell and questioned him about the incident. Crockett told Miller that D'George was the aggressor, at which time Miller began to choke Crockett and told Crockett that the incident made him look bad and that if Crockett wished to leave the RHU alive he would forget what he had just told Miller about the altercation with D'George. The choking caused Crockett pain and shortness of breath while it was occurring, (and hurt for several days, Crockett depo. at 43) and seemed to Crockett to go on for a lifetime, but Crockett

4

could not estimate how long in minutes or seconds that was, and because there are no mirrors in the RHU did not know whether he ever had a mark on his neck. Then Miller left, returned with a lunch tray, escorted Crockett back to the cell in the RHU he had shared with Morgan (who had in the meantime been released from the RHU, Crockett depo. at 62), gave Crockett the meal tray and told Crockett that if he did repeat the circumstances of the choking to anyone it would be the "last time" he would eat. Crockett depo. at 27-38. That last remark is the sole basis for Crockett's belief that Miller had ordered the other corrections officers to place his food trays out of reach for the previous three days. Crockett depo. at 55-56 and 66-67; Crockett Answer to interrogatories 4, 5, and 6. Miller later came back with a fabricated incident report indicating that Crockett admitted assaulting D'George and sentencing Crockett to 90 days in the RHU. Crockett depo. at 57-59.

Crockett eventually reported the choking incident to Miller's fellow corrections officers when he asked for grievance forms to file a grievance against Miller. Crockett's throat hurt for several days, but he never sought medical attention for it. Crockett depo. at 43. Crockett gives two explanations for this. On the one hand Crockett says that he did not seek medical attention because Miller threatened that if he told anyone "it would be the last time that I would eat." Crockett depo. at 37-38.

On the other hand Crockett said the reason that he did not even mention his need for medical attention to the corrections officers was because by the time he first asked for grievance forms "a few weeks had passed," Crockett depo. at 42, and by that time his throat felt better after hurting for "several days." Crockett depo. at 43. Crockett asserts that he still has nightmares about Miller choking him, although their occurrence follows no discernible pattern and he has never sought medical treatment for them. Crockett depo. at 75-76.

The Supreme Court's explanation of the Eighth Amendment's restrictions on use of force to maintain or restore discipline in a prison environment begins with <u>Whitley v. Albers</u>, 475 U.S. 312 (1986), in which Gerald Albers was deliberately shot in the left knee by a corrections officer armed with a shotgun during an attempt to rescue a corrections officer who had been taken hostage. Assuming, as the Supreme Court did, that shooting Albers was unnecessary, and even though the evidence was that Albers had not been involved in the riot and indeed had attempted to help resolve matters, his actions in climbing stairs toward his cell were "equivocal conduct" that the officer with the shotgun may have thought, incorrectly, constituted a threat to the hostage. 475 U.S. at 324-26. The Supreme Court quoted <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir.) <u>cert. denied</u>, 414 U.S. 1033 (1973) for the language establishing the Eighth Amendment standard for prison

security measures used to maintain or restore order: liability turns on whether force is applied in good faith or "maliciously and sadistically for the very purpose of causing harm." 475 U.S. at 320-21. In practice, the malice or sadism of the corrections officers must be inferred from objective evidence, because even inappropriate uses of force must rise "to the level of a constitutional dimension" and:

> There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically.

Reyes v. Chinnici, 54 Fed.Appx. 44, 48 (3d Cir.2002). See Smith v. Mensinger, 293 F.3d 641, 648-49 (3d Cir.2002), quoting Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir.2000)(factors to be considered include the need for use of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the threat to staff and other inmates perceived by the corrections officers, and any efforts made to temper the severity of the force used). See also Reyes v. Chinnici, supra (affirming summary judgment in favor of a corrections officer after assuming that a jury could have found the officer punched a handcuffed prisoner and after noting that all three corrections officers deposed had opined that punching a handcuffed inmate can never be an acceptable use of force.)

A second line of Supreme Court cases dealing with the more general conditions of confinement holds that corrections

officers have a duty not to be deliberately indifferent to an inmate's basic human needs for food, water, warmth, shelter, and medical care, and to eliminate unreasonable risks of harm to an inmate. Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Wilson v. Seiter, 501 U.S. 294, 304 (1991); Helling v. McKinney, 509 U.S. 25, 30 (1993). Both claims in this matter would be more appropriately analyzed under the Whitley v. Albers rubric. Obviously the alleged choking is a use of force, but the alleged intentional deprivation of food is more properly looked at as an intentional use of force than as a condition of confinement.

Summary judgment must be entered in favor of Miller on the deprivation of food claim without even reaching the question which mode of analysis is better for two reasons: 1) there is no evidence that Miller is responsible for any deprivation of food; and 2) Crockett produces no evidence of any injury.

Taking that last point first, it is true that for a medically fragile person (a diabetic, someone whose immune system is compromised) a deprivation of food that lasts for several meals could put them at risk of injury, but the human body ordinarily is not such a fragile thing that the simple lack of food for several days is going to hurt it. Persons stranded as a result of accidents or natural disasters, persons taking part in religious observances, political protests, or even faddish dieting, not to mention persons without money, or without access to the three meals

8

a day plaintiff had been used to since his arrest 16 months earlier, often go several days without food with no ill effects. Simple hunger is not injury. In Crockett's case even hunger was so minimal that he did not think it necessary to ask his cellmate for food or put in a request to see the medical personnel in the prison. (And as I said before I disregard for purposes of this motion defendant's evidence that Crockett was in fact fed and was also out of his cell during that time period for showers and the like without feeling the need to mention his deprivation to anyone but the very same guards who allegedly were tantalizing him with the food trays delivered out of his reach.) Crockett's obvious assumption that the Eighth Amendment does not require a showing of injury is incorrect. Because Crockett does not offer any evidence of injury and in fact affirmatively disclaims any injury from the alleged deprivation of food, summary judgment would have to be entered for defendant Miller. To forestall any after the fact argument that a jury that believed someone deprived Crockett of food could award punitive damages even if Crockett suffered no injury, I point out that the Prison Litigation Reform Act, codified in relevant part at 18 U.S.C.§ 3626(a)(1)(A), prohibits the award in a prison civil rights claim of any prospective relief which is not "necessary to correct the violation" of a plaintiff's federal rights. The definition of "prospective relief" in 18 U.S.C.§ 3626(g)(7) is any relief other than compensatory money damages.

9

Since by definition punitive damages are not compensatory damages and do not "correct a violation" of a plaintiff's rights, but rather are punishment for a defendant's wrongdoing, they are precluded. I am aware that there is some *obiter dicta* in published cases about the availability of punitive damages, but because they do not take the PLRA into account they are not authoritative.

And, bringing the discussion back to my first point, Crockett did not sue "someone," he sued Miller, and must provide evidence of Miller's personal involvement. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005). Summary judgment should be entered for Miller because there is no evidence from which a jury that believed Crockett was deprived of food could do more that speculate that it was Miller who ordered or permitted the alleged deprivation of food. Crockett's only evidence of Miller's alleged involvement is Miller's comment when **providing** Crockett with food on December 17th. Crockett's account requires a jury to believe that he was one of four inmates segregated in the RHU over the assault on D'George Miller, and that Miller must have immediately ordered corrections officers to starve him but not the other three involved. Crockett does not even suggest a motive for such random behavior. Crockett does assert that Miller's alleged hostility toward him on December 17th stemmed from Crockett giving an unwelcome account of the assault on D'George. That account could not cause Miller to order the deprivation of food to Crockett on

10

the three previous days.  Further, Miller himself provided Crockett with food immediately after Crockett so provoked him, and no one ever denied Crockett food again, even after Crockett defied Miller's alleged threat and complained to other corrections officers about Miller.

As for the choking claim, as anyone reading the record can see my summary of the evidence relies wholly on Crockett's account as given in his motion for summary judgment, his brief in support, and in his sworn deposition.  Miller's alleged use of force, accepting the characterization Crockett gives it for purposes of litigation, can hardly be called a use of force.  By his own account, Crockett alleges that he stood through the entire episode without loss of consciousness and immediately afterwards walked back to his cell without any reported difficulty.  Crockett alleges a sore throat lasting "several days."  So little force was used even by Crockett's account in his deposition that Crockett never contends he mentioned it during any of the several trips from prison to court either for his preliminary hearing in February 2010 in <u>Commonwealth v. Crockett</u> Cr. No. 338-2010 (C.P. Blair Co.), or for his two guilty pleas and sentencings during 2010.  Crockett, despite every incentive to do so in order to discredit Miller at the preliminary hearing, never even brought the subject up.  <u>See</u> docket no. 96, Exhibit 6, Preliminary Hearing Transcript for <u>Commonwealth v. Crockett</u> Cr. No. 338-2010 (C.P. Blair Co.).

11

Crockett never contends that he mentioned the alleged choking to his attorney, never sought medical treatment, in fact never mentioned the claim in the complaint he filed almost at the end of the limitations period. See docket no. 5, Complaint. (I mention the absence of any complaint by Crockett for its relevance to the question whether here is any evidence of excessive use of force; I do not need to analyze whether the amended complaint alleging the choking claim after the limitations period ended would relate back under Fed.R.Civ.P. 15(c).)

Most telling, immediately after being choked, Crockett was able without any difficulty to eat the lunch provided by Miller, and every meal after that. I think Fed.R.Evid. 201 permits me to take judicial notice that the trachea and esophagus are both in the throat. How Miller could use excessive force on the one and so completely miss the other is something no jury should be allowed to speculate about.

Unprovoked assaults, <u>Wilkins v. Gaddy</u>, 559 U.S. 34 (2010)(Wilkins asked corrections officer Gaddy for a grievance form and Gaddy punched, kicked, kneed, and choked Wilkins) and retaliatory beatings, <u>Smith v. Mensinger</u>, 293 F.3d 641 (3d Cir.2002)(inmate's head rammed into walls and cabinets, then inmate kicked, punched, and choked) undoubtedly happen and deserve to be heard by a jury. Minor uses of force that someone in hindsight may claim to have been greater than strictly necessary or even

12

inappropriate do not violate the Eighth Amendment (or Fourth Amendment) and present claims that perhaps fail at the summary judgment stage, Carson v. Mulvihill, 488 Fed. Appx. 554 (3d Cir.2012)(affirming summary judgment to corrections officer who "launched" a wheelchair-bound inmate into a steel bunk to return him to his cell); Reyes v. Chinnici, supra, and perhaps present genuine disputes of fact. But alleged uses of force that are so de minimis that even if believed would fall far short of creating a genuine issue of material fact as to excessiveness must result in summary judgment for the defendants. On the evidence seen in the light most favorable to Crockett summary judgment should be entered for Miller.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 17 January 2014

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

    Ivan M. Crockett JS-1105
    S.C.I. Somerset
    1600 Walters Mill Road
    Somerset, PA 15510

13